Byers *v.* Davis.

Filed Jan. 20, 1892.

---

No. 374.

## BYERS *v.* DAVIS.

PARTITION FENCE.—*Contribution for.*—*Repairs.*—A fence was erected by the plaintiff to repair and replace an old fence for the purpose of enclosing his land. No portion of the old fence was nearer the defendant's land than five feet. The greater portion of it was from 165 to 330 feet away, and parts of it were nearly one-eighth of a mile distant from the defendant's land. The defendant never agreed that the old fence should be a partition fence, or that he would repair it. He had never repaired it or joined any fence to it.

*Held,* that it was not a partition fence, and that the defendant was not liable to the plaintiff for any portion of the expense of repairing it. As to what constitutes a partition fence, and the law governing the division of expense, see sections 4848–4856, R. S. 1881.

INTERROGATORIES.—*Answers to.*—*Presumption as to Special Finding.*—Where it appears that the jury returned into open court their answers to interrogatories submitted to them, and the interrogatories and answers so referred to are set out in the record, each answer signed, like the general verdict, by the foreman, it can not be presumed, in the absence of any further showing, that the court thus received from the jury, and made part of the record of the cause, answers to interrogatories which had not been submitted properly to the jury, with correct instructions concerning them.

From the Gibson Circuit Court.

*L. C. Embree,* for appellant.

*C. A. Buskirk* and *J. W. Brady,* for appellee.

BLACK, J.—The appellee sued the appellant to recover one-half the cost of a certain fence. Upon trial by jury a verdict was returned for the appellee for $66.09.

The evidence, the portion thereof introduced by the appellant consisting of his interrogatories filed with the pleadings and the appellee's answers thereto, showed the following state of facts:

The appellee owned a tract of land adjoining the south side of a tract owned by the appellant, each party having owned his tract for more than thirty-five years. The dividing line, commenting at its western extremity, extended east three-fourths of a mile; thence north one-fourth of a mile; thence east one-fourth of a mile. On the 29th of March, 1884, the appellee served on the appellant a written notice, as follows:

"To George Byers: The undersigned hereby gives you notice that he will call upon two disinterested freeholders to examine, on the 3d day of April, 1884, the fence, commencing," etc. (describing the line dividing said tracts of land), "and if said freeholders deem the fence on said line insufficient, for them to assess the amount required to make it sufficient. The undersigned fixes the hour of 10 o'clock A. M., on the day aforesaid, for the freeholders to make their examination and assessment above mentioned.

"SAMUEL H. DAVIS."

On the west one-half mile of the dividing line was a fence, a portion of which had been built and maintained by the appellant, and the remainder of which had been built and maintained by the appellee. There was no examination of this one-half mile of fence under the notice, and no alteration thereof was made.

The appellee called upon two disinterested freeholders, who, on the day appointed, at 9 o'clock in the morning, called at the appellee's place, and with him they immediately proceeded to examine the east three-fourths of a mile of the line between said tracts, as established by a survey made about two years before, and also to examine certain rail fences which for many years had existed at varying distances from the surveyed line.

A portion, farthest east, of the fence so examined, had been built by the appellee's grantors as part of the enclosure of an old field, constituting a part of appellee's said land. The remainder of the fence so examined had been constructed by the appellee, after he became the owner of the land, for his own use and convenience, as he cleared up his land south of the appellant's land. It was built to keep stock off the appellee's cleared land, and to keep the stock of the parties apart. As the appellee would clear up a field, he would extend the fence to enclose it. Before the survey appellee did not know exactly where the line was. All the fence so examined was upon the appellee's land. The west one-fourth of a mile of it was at least five feet from the line, and was not much of a fence ; there was hardly any fence there.

The remainder of the fence examined, being one-fourth of a mile north and south and one-fourth of a mile east and west, ran in an irregular course through woods and along or around the brow of a hill between an old field and the woods. Appellee always knew that it was not on the line. He testified that he could see that it was not, " by sighting from the other fence at the west end of our line."

The eastern one-half mile of fence examined stood from ten to twenty rods from the surveyed line, and at its east end ran southeast, its eastern extremity being nearly one-eighth of a mile south of appellant's land.

The examiners estimated the cost of constructing a fence along the eastern three-fourths of a mile of the dividing line as so surveyed, the rails of the old fence so examined to be used in such construction with new rails enough to make the fence. They assessed the amount required at $152.67, including therein eight dollars for clearing the fence-row. The making of the examination and the assessment occupied about two hours. The appellant was not present. The appellee having waited twenty or thirty days after said examination and assessment, and the appellant not having done anything, the appellee constructed a nine-rail fence along the eastern

three-fourths of a mile of the dividing line as so surveyed, except that for about twenty or thirty rods, where a creek ran along and wound across the line, in its eastern portion, and made the erection of a fence upon the line impracticable, he built the fence upon his side of the line. The fence so constructed was a good fence, such as good husbandmen usually keep. It would turn hogs, sheep, horses and cattle. In the construction thereof the rails of the old fence were used with new rails. It cost as much as the amount assessed, and was reasonably worth that much or more.

The lands of the appellant north of the east three-fourths of a mile of the dividing line were enclosed, at the date of said notice, by fences built in part by himself and in part by proprietors of lands adjoining on the east and north. It might have been found from the evidence that said three-fourths of a mile of old fence built by the appellee and his grantors was constructed before the lands of the appellant were so enclosed, such enclosure having been completed by a fence built by a proprietor of land adjoining on the north.

This portion of appellant's land had not been cultivated, though some part of it had been cleared. It had been used by him for many years, both before and after it was so enclosed, for pasturing animals. He pastured sheep, hogs, horses and cattle upon it. There never was any agreement between the parties to build or maintain a fence only to restrain horses, mules or cattle.

The old fence so examined was found by the examiners to be insufficient. Some of it had been torn down. It would not turn any kind of stock. It was the only fence to keep the animals of each party off the lands of the other throughout its course. The appellant had never agreed that it should be a partition fence, or that he would aid in keeping it in repair, and he never did anything toward building or repairing it, or any part of it, and never exercised any control over it. He never joined any fence to it, the fence to which said old fence was joined at the east end thereof having

been built by one Keimer, a proprietor of land adjoining on the east the land of the appellant and that of the appellee.

The controlling question in the case relates to the proper construction and application of our statutory provisions concerning partition fences. The following provisions of the revised statutes of 1881, require attention :

Section 4848. "A lawful partition fence shall, in all cases, be such as to enclose and restrain sheep, unless, by mutual consent of the parties interested, they agree to build a fence only to restrain or enclose horses, mules, or cattle. Except when otherwise specially agreed, partition fences dividing lands, occupied on both sides, shall be maintained, throughout the year, equally by both parties."

Section 4849. " If either party fail so to do, the other may give him three days' notice that he will call upon two disinterested freeholders, at a specified hour, on a day fixed, to examine said fence and, if they deem it insufficient, to assess the amount required to make it sufficient."

Section 4850. " If within fifteen days thereafter, the party to whom notice has been given shall not repair said fence, the complainant may do so ; and in that case, he shall have his action against the other for the amount so assessed, with ten per cent. damages thereon."

Section 4853. " When, by inclosure of uninclosed land, a fence already erected shall become a partition fence, the person making such inclosure shall pay to the owner of the fence the value of one-half of the same, as estimated by the owner."

Section 4854. " If he refuse, the owner may bring suit for the same," etc.

Section 4855. " No person inclosing land that has heretofore been open shall join his fence to that of another, except by consent. If no consent be given, each shall give one-half the width of a lane, or a reasonable distance, for the erection of a second fence."

Section 4856. "When any party shall cease to use his lands, or shall lay open his enclosures, he shall not take away any part of his fence which forms a partition fence between him and the enclosure of any other person, until he shall have first given six months' notice to such person or persons as may be interested in the removing of said fence, of his intention to remove the same."

The appellee pursued the mode of proceeding provided for by said sections 4849 and 4850. It would seem that there could be no recovery by him unless the three-fourths of a mile of old fence constructed by him and his grantors many years before was a partition fence at the time the notice for the examination was given.

The appellant had never agreed that it should be a partition fence, or that he would repair it. He had never repaired it. He had not joined any fence to it. It was wholly upon the land of the appellee, who had constructed it from time to time to enclose his fields. No part of it was nearer the dividing line than five feet, and the greater portion of it was from one hundred and sixty-five feet to three hundred and thirty feet from the line, while some part of it was nearly one-eighth of a mile from the line. The appellant had never exercised any control over it, and it was wholly owned and controlled by the appellee.

It would scarcely be contended that at the time the notice was given, and the new fence was erected, or at any prior time after the construction of said old fence, the appellee would not have been entitled to remove or destroy it without first giving six months' notice to the appellant. If, not having given such notice, the appellee could have taken the fence away without incurring responsibility therefor to the appellant, it was not a partition fence within the meaning of the statute.

And it would hardly be supposed that where, by the construction of a fence by a third person, to enclose his own land north of that of the appellant, the land of the appel-

lant became shut in on other sides, he, continuing as before to use his land for pasturage, at once became liable to pay the appellee the value of one-half of said old fence. If the appellant did not become so liable, such enclosing of his land did not make the old fence a partition fence.

Again, it would scarcely be concluded that the appellee could have required the appellant to contribute to the repairing of the fence in its original location, or that the appellant was under any obligation to maintain the old fence throughout the year equally with the appellee. If this be true, it was not a partition fence.

To arrive at the conclusion that the old fence was not a partition fence it need not be held that a fence in all other respects a partition fence can never be such if it be not exactly upon and along the true line of division.

We must be guided by the statute, and we can not regard the building of this new fence as within the meaning of the statute under which the appellee proceeded, which manifestly contemplates the repairing of an existing partition fence.

Having thus reached the conclusion that the evidence, all of which was furnished by the appellee, was not sufficient to sustain the verdict in his favor, because it showed that the fence in question was not a partition fence, we need not examine other questions presented by the motion for a new trial.

The record shows that the jury returned " into open court their verdict herein, together with their answers to two sets of interrogatories submitted to them, in the words and figures following." Then follows the general verdict, signed by the foreman, immediately after which follow twenty-one interrogatories with their answers, each answer being signed by the foreman. The first three of these interrogatories and answers are numbered 1, 2, 3. The next eighteen are numbered from 1 to 18 consecutively. A bill of exceptions filed by the appellant showed that he submitted these eighteen in-

terrogatories in conformity in all respects with the statute on that subject.  Nothing further than is stated above is shown concerning the submission of the first three interrogatories, and it is contended by the appellant that they and their answers should not be considered in determining the question whether the court erred in overruling his motion for judgment on the answers to interrogatories.  This would be contrary to the necessary rule, that we must presume the action of the trial court to have been regular and correct, unless the record shows it to have been otherwise.  If an appellant should present the question whether the trial court had erred in refusing to submit his interrogatories to the jury, it might well be insisted that the record should show that he had complied with the statute so as to impose upon the trial court the duty to submit the interrogatories.  In this case it appears that the jury returned into open court their answers to interrogatories submitted to them, and the interrogatories and answers so referred to are set out in the record, each answer signed, like the general verdict, by the foreman.  It can not be presumed, in the absence of any further showing, that the court thus received from the jury, and made part of the record of the cause, answers to interrogatories which had not been submitted properly to the jury with correct instructions concerning them.  See *Frank* v. *Grimes,* 105 Ind. 346.

The appellant, in pressing upon our attention his assignment that the court erred in overruling his motion for judgment, relies upon the supposed propriety of ignoring the first set of three interrogatories and their answers.  This being impossible, and it being also impossible for us to look to the evidence in considering the ruling on that motion, we are unable to say that there is an irreconcilable conflict between the general verdict and the special findings, which need not be set out here or further discussed.

A demurrer was sustained to the first paragraph of the

complaint, and demurrers to the second and third paragraphs of the complaint were overruled.

No objection to the second paragraph of the complaint is suggested.

The third paragraph is very carefully drawn, so carefully as to avoid the directness and certainty desirable in a pleading.

We think it can not be held that there can never, under any circumstances, be a partition fence for the repairing of which contribution may be enforced under the provision of our statute, in the absence of an agreement of the parties interested that it shall be a partition fence. And we are of the opinion that it is not impossible that a partition fence might exist for the repairing of which contribution might be enforced, though it should not stand exactly upon and along the true partition line. See *Robb* v. *Brachman*, 24 Ohio St. 3; *Stallcup* v. *Bradley*, 3 Coldw. 406.

We conclude that the third paragraph of the complaint narrowly escapes insufficiency. It does not seem necessary to notice it more particularly.

The judgment is reversed, and the cause is remanded, with instruction to sustain the appellant's motion for a new trial.

Filed Jan. 19, 1892.