The Pennsylvania Company *v.* Meyers, Administratrix.

No. 14,416.

THE PENNSYLVANIA COMPANY *v.* MEYERS, ADMINIS—
TRATRIX.

INTERROGATORIES TO JURY.—*Answers to.*— *When in Record.*—*Submission by Court.*—*Presumption.*—*Instructions.*—In the absence of any showing on the subject, by the record, where interrogatories to the jury and their answers thereto appear in the record, it will be presumed that the trial court did its duty and submitted such interrogatories to the jury, with instructions to answer the same if they found a general verdict, and the interrogatories and answers are properly before the court for its consideration.

NEGLIGENCE.—*Gross Negligence.*— *Willful Injury.*—*Contributory Negligence.*—*Recovery.*—There is no middle ground between the negligent doing or omission of an act causing injury to another and the willful injury of the same, whereon the injured party may recover regardless of his own negligence, because of the gross negligence of the party inflicting the injury.

RAILROAD.—*Personal Injury.*—*Negligence.*— *Walking on Track in Front of Approaching Train.*—*Duty of Company.*—*Presumption.*—*Contributory Negligence.*— *Willful Injury.*—Where a person is walking on a railroad track in front of an approaching train, the servants in charge of the train have the right to presume, up to the last moment, that he will step off the track in time to avoid injury, where it is possible to do so; and ordinary care on the part of such servants does not require them to anticipate that he will not get off the track, and to stop the train and forcibly or otherwise remove him. And even if such person has a right to walk on the track, the right of the company in running its trains takes precedence over his, and he must, by a due exercise of his senses, take the proper precaution against injury, or such failure so to do will amount to contributory negligence and defeat a recovery, regardless of the company's negligence, unless the injury was willfully inflicted.

SAME.—*Personal Injury.*—*Damages.*—*General Verdict.*—*Answers to Interrogatories.*—*Irreconcilable Conflict.*—*Recovery.*— *Contributory Negligence.*—In an action against a railroad company for damages for injuries inflicted upon one while walking upon the railroad track, a general verdict having been returned in favor of the injured party, upon issues formed by the general denial, such verdict necessarily affirmed that the intestate looked and listened for the approach of the train that struck and killed him, and that he exercised due care and caution to avoid the injury occasioned thereby, while the

special verdict, in answer to interrogatories, contradicts such facts; under such circumstances, the court is required to treat the special finding as true, and the general verdict, to the extent of such conflict, as untrue.

From the Allen Superior Court.

*A. Zollars* and *J. Brackenridge,* for appellant.
*L. M. Ninde* and *H. W. Ninde,* for appellee.

McCABE, J.—This action was brought by the appellee, against appellant, to recover damages for alleged negligence in causing the death of the intestate, Ferdinand Meyers, deceased husband of the appellee.

The complaint was in three paragraphs, a several demurrer to each of which was overruled; answer by general denial, trial by jury, verdict for appellee for $7,000, and along with the verdict the jury answered interrogatories propounded by both parties; the trial court overruled appellant's motion for judgment in its favor upon the answers to such interrogatories, notwithstanding the general verdict, and overruled appellant's motion for a new trial.

The assignments of error call in question these several rulings.

The first paragraph of the complaint charges, that appellee's intestate was a policeman in the city of Ft. Wayne at the time of his injury and death, on the 22d day of April, 1887, with full power and authority from the city and the appellant in the discharge of his duties of policeman to go upon appellant's railroad, and pass along its tracks for the better protection of said railroad; that said railroad was constructed with a double track through said city; that upon the day above named, the decedent, Ferdinand Meyers, in the discharge of his duty as policeman, was carefully and diligently passing on and along the south track of said railroad, from Fairfield

avenue to Broadway in said city, in the night time, when said appellant, by its agents and servants, carelessly, etc., in violation of an ordinance of said city, ran its east-bound passenger express train over and along said south track of its railroad, between said Fairfield avenue and Broadway, at a dangerous rate of speed, to wit, forty miles an hour, and that the intestate, to avoid a collision with said train, carefully and diligently watched its progress, to ascertain which track it was on, and so soon as he found that the train was meeting him on said track, to avoid injury, he "carefully and diligently" stepped from the south track of the road to the north track thereof, when the appellant carelessly drove and ran a certain other of its express passenger trains westward on and along said north track of its railroad, at a dangerous rate of speed, to wit, forty miles an hour, on and over said intestate, whereby he was killed, etc.

The paragraph further alleges that said train was running two hours behind its schedule time, without warning the intestate of its approach, by ringing the bell, blowing the steam whistle, or other signal, whereby he could, by due care, have heard the same, and been advised that it was running on said track and approaching him.

The complaint further sets out an ordinance of the city, and rule of the appellant, limiting trains to a speed of six miles an hour in passing through the city, and then follows the averment that the defendant was killed without any fault on his part.

The second paragraph of the complaint is substantially the same in its statement of facts as the first paragraph, except that it is alleged, that the train running west on the north track of the railroad was run in the negligent manner stated; that with full knowledge that the intestate was on the track, the appellant ran the train at the

The Pennsylvania Company *v.* Meyers, Administratrix.

rate of forty miles an hour, without warning of its approach; that it was two hours behind time, running through a populous portion of the city in violation of a city ordinance; that with gross negligence such train was run upon the intestate "willingly," willfully, and unlawfully.

The third paragraph alleges, among other things, that the railroad is double tracked through the city, and that the intestate, at the time of his injury, and for ten years theretofore, had been a duly appointed policeman of said city of Ft. Wayne, with full power and authority as such—in the discharge of his duties, and in passing from place to place in said city—to go upon the said railroad, and pass along and over its track in said city for the better protection of the same.

The principal allegations in this paragraph of the complaint are very similar to those in the others. In this, as in those, it is alleged that he went upon the south track, and to avoid a passenger train approaching him thereon, he stepped on to the north track, when the appellant carelessly, negligently and without any due regard for life, limbs, or safety of said deceased, willfully drove its west bound passenger train along its said north track, at a dangerous rate of speed, to wit, forty miles an hour, and carelessly, negligently and recklessly, and without any regard for the safety of the deceased, willingly and willfully ran said train over said deceased and killed him.

It is further alleged that the train was run in violation of an ordinance of the city, and a rule of the appellant, limiting the speed of trains to six miles an hour. There is no averment in this paragraph, that the injury occurred without the fault of the intestate, and it is probable that the design of the pleader was to charge a purposed and intentional killing.

In the view we have taken of the answers to the interrogatories, it is unnecessary to pass upon the question as to whether either of the paragraphs of the complaint states facts sufficient to constitute a cause of action. The interrogatories and the answers thereto returned by the jury cover the whole entire case, and are decisive of it the one way or the other. It is earnestly contended, however, on part of the appellee, that the interrogatories and answers thereto are not in the record. We therefore set out that part of the record immediately preceding the interrogatories, pertinent to the question, along with them, which are as follows:

"Come the parties, and said jury also comes, and having heard the evidence and argument of counsel concluded, and received the charge of the court, the said jury retire to their room to deliberate of their verdict, together with certain interrogatories to them propounded by consent and approval of the court. * * * Come the parties, and the said jury also come, and return into open court their verdict, together with the interrogatories to them propounded and their answers thereto, and which verdict and interrogatories are in these words: 'We, the jury, find for the plaintiff, and assess her damages in the sum of seven thousand dollars.

'JOHN AIKEN, Foreman.' "

The plaintiff asks the court to require the jury, if they find a general verdict in said cause, to answer the following interrogatories:

"1. Was not the deceased, at the time of his death, a duly appointed policeman of the city of Ft. Wayne, and had he not held and discharged the duties of said office for several years before his death?

"Ans. Yes.

"2. Was not the defendant's railroad track where the deceased was killed, within and a part of his beat?

The Pennsylvania Company *v.* Meyers, Administratrix.

"Ans. Yes.

"3. Was it not the duty of the deceased to patrol and go on and along the defendant's said railroad track, when necessary to keep tramps and law-breakers off of said tracks, and to protect the defendant's said track and its property thereon?

"Ans. Yes.

"4. Had not the deceased authority from the defendant to go on to and patrol said tracks before and at the time he was struck and killed by the defendant's train?

"Ans. Yes.

"5. Was he not proceeding carefully on and along said track in the faithful discharge of his duties as such policeman at the time he was struck by defendant's train?

"Ans. Yes.

"6. Was not the defendant, by its agents and servants, running its east bound passenger and express train on its south track past the deceased at the time he was struck?

"Ans. Yes.

"7. Was not the deceased going westward on the north track at the time he was struck?

"Ans. Yes.

"8. Did not the defendant's west bound passenger and express train approach the deceased from behind him with great violence and at a high rate of speed, and strike him?

"Ans. Yes.

"9. Was not the deceased ignorant of the approach of said train that struck him till is was too late for him to avoid being struck?

"Ans. Yes.

"10. Was not said west bound train going at the rate

of thirty to thirty-five miles per hour at the time it struck the deceased?

"Ans. Yes.

"11. Was not the east bound train running at the rate of twenty miles per hour or more at the time the deceased was passing it?

"Ans. Yes.

"12. Did not the accident occur in a populous and frequented portion of the said city of Ft. Wayne?

"Ans. Yes.

"13. Did not the city of Ft. Wayne, by ordinance duly passed, prohibit trains running through said city faster than six miles per ,hour, and was not said ordinance in force and known to defendant at the time deceased was killed?

"Ans. Yes.

"14. Had not the defendant a printed and published rule that no train should be run through said city faster than six miles per hour?

"Ans. Yes.

"15. Was not said west bound train, at the time it struck the deceased, being run at the said rate of thirty to thirty-five miles per hour without ringing its bell?

"Ans. Yes, and bell ringing.

"16. Was not said east bound train, as it passed deceased, ringing its bell and making other loud noises so as to prevent the deceased from hearing the approach of said train that struck him?

"Ans. Yes.

"17. Was not the electric light burning at Fairfield avenue at the time of the accident?

"Ans. Yes.

"18. By said light and by the aid of its headlight, could not the agents of the defendant on the engine of said west bound train have seen said deceased on said

track long enough before it struck him to have stopped said train before it struck him?

"Ans. Yes.

"19. Did not said defendant's said agents so run said west bound train at said violent rate of speed, with full knowledge that it was unlawful and prohibited by said printed rule and said ordinance, and with indifference as to the consequence to the lives and limbs of others?

"Ans. Yes.

"20. Did not said defendant and its servants and agents run said west bound train at said high and dangerous rate of speed for the purpose and with the intention of making up lost time, even if such speed did endanger the lives and limbs of others?

"Ans. Yes.

"We, the jury, find the above answers to the foregoing interrogatories to be true.    JOHN AIKEN, Foreman."

The defendant asks the court to direct the jury in case they return a general verdict in this cause, that they be required to find specially upon the following particular questions:

"1. Was Ferdinand Meyers injured on his person, on the Pittsburgh, Ft. Wayne and Chicago Railway in the city of Ft. Wayne?

"Ans. Yes.

"2. When?

"Ans. April 22, 1887.

"3. Was such injury caused by collision with passenger train No. 9?

"Ans. Yes.

"4. Did such injury result in death?

"Ans. Yes.

"5. How soon after such injury did he die?

"Ans. No evidence.

"6. Was not Meyers, at the time of his death, a policeman of the city of Ft. Wayne?

"Ans. Yes.

"7. How long preceding his death had he been acting as policeman?

"Ans. About six years.

"8. What time of day was Meyers injured?

"Ans. 7:41 P. M.

"9. Did not Meyers, at the time of his injury and death, reside on Ewing street, between Jefferson and Brackenridge streets, in the city of Ft. Wayne?

"Ans. Yes.

"10. Was not Meyers walking west on the north main track of the railway at the time he was struck by the engine?

"Ans. Yes.

"11. Was he not so struck between where Fairfield avenue and Broadway cross the railway?

"Ans. Yes.

"12. Is not the depot or station house of the defendant east of Fairfield avenue?

"Ans. Yes.

"13. How far in feet?

"Ans. About 2,000 feet.

"14. Is Broadway west of Fairfield avenue?

"Ans. Yes.

"15. If so, what distance in feet?

"Ans. 924 feet, about.

"16. Was Meyers' duty as night policeman, at the time of his injury, to be performed on Broadway street?

"Ans. Yes.

"17. Was not Meyers, at the time of his injury, on his way to enter upon the discharge of the duties as policeman on his beat at Broadway?

"Ans. Yes.

"18. Are there not two tracks of the defendant running straight, or nearly so, from the station house westerly to Broadway, and so on to the river?

"Ans. Yes.

"19. Are not these tracks known as the north main track and the south main track?

"Ans. Yes.

"20. Do not trains going west run on the north main track and trains going east use the south main track?

"Ans. Yes.

"21. Was not the train that struck Meyers running west on the north main track at the time of the injury?

"Ans. Yes.

"22. At the time of the injury to Meyers, did not the passenger train No. 8, coming from the west, pass the train that struck Meyers between Fairfield avenue and Broadway street?

"Ans. Yes.

"23. Was not said train No. 8 then on time or nearly so?

"Ans. Yes.

"24. Was not train No. 9, when it left the depot the evening of the injury, about two hours late?

"Ans. Yes.

"25. Is not a train of cars standing on either of the tracks at the depot, and all the time while passing from the depot to Broadway, in plain sight of a person at said Broadway, or at any point between Fairfield avenue and Broadway?

"Ans. Yes.

"26. Did not Meyers, a few minutes before his injury, leave the crossing at Fairfield avenue and walk west on said north main track, in front of train No. 9, then approaching, and travel west on said north main track until struck by the engine of said train No. 9?

"Ans. No evidence.

"27. Was not the bell on the engine of train No. 9 ringing when it crossed the avenue, and continuously until the time of the collision?

"Ans. Yes.

"28. When Meyers stepped on to the north main track, how far distant from him was the engine that struck him?

"Ans. No evidence.

"29. Could Meyers, by looking, have seen the engine approaching?

"Ans. Yes.

"30. Was the headlight on the engine burning at the time?

"Ans. Yes.

"31. Did the engineer sound the alarm whistle just before the engine struck Meyers?

"Ans. Yes.

"32. Could not Meyers have seen the engine approaching all the way from the depot to the point of collision by looking east?

"Ans. No evidence.

"33. Did he look or listen for it?

"Ans. No evidence.

"34. Did Meyers make use of any means whatever to find out whether it was safe to go on the north main track where he did so at the time of the injury?

"Ans. No evidence.

"35. Is there, and was there not at and before the injury to Meyers, a plain level walk of about eight feet in width between the south main track and the north main track, extending from Fairfield avenue to Broadway, on which Meyers might have traveled from one street to the other?

"Ans. Yes.

"36. Is and was there not, at and before the time of the injury, a good level walk along the north side of the main track over which Meyers might have gone in safety from Fairfield crossing to Broadway crossing?

"Ans. Yes.

"37. Could Meyers not have passed in safety along the south side of the south main track from Fairfield avenue crossing to Broadway crossing, at the time of his injury?

"Ans. Yes.

"38. Is not, and was not, at the time of the injury, the north rail of the south main track about eight feet distant from the south rail of the north main track between Fairfield avenue and Broadway?

"Ans. Yes.

"39. Was not the engine about fifty feet away from Meyers at the time he stepped on to the north main track? If not, how far from him was it?

"Ans. No evidence.

"40. How far was Meyers distant from the engine when the engineer discovered that he was on the track, in front of the engine immediately preceding the time of the collision?

"Ans. About fifty or sixty feet.

"41. On the occasion of the injury and about the time Meyers left the Fairfield avenue crossing to go to Broadway, did not the watchman at said crossing notify Meyers that No. 9 was at the depot and would come along soon?

"Ans. Yes.

"42. Did the engineer run the engine upon Meyers willfully and intentionally?

"Ans. No evidence that he did.

"43. At the time the engineer first saw Meyers on the track, could he have stopped the engine in time to have avoided the collision?

"Ans. No.

"44. Was there not an electric light burning at the Fairfield avenue crossing on the evening and at the time Meyers was injured?

"Ans. Yes.

"45. From Calhoun street to Broadway, do not the tracks of the railway run straight and nearly west?

"Ans. Yes.

"46. Does not Fairfield avenue run north and south and cross the defendant's tracks at right angles or nearly so?

"Ans. Yes.

"47. Were there not several other routes that were convenient and direct, by which Meyers might have traveled to his beat, without going on the railroad tracks or grounds, except across the tracks at Broadway?

"Ans. Yes.

"48. How long had Meyers been discharging police duty on his Broadway beat immediately preceding his injury and death?

"Ans. Six years.

"49. Was not Meyers, at the time of his injury, on the way to his beat to commence the discharge of his duty as patrolman for the night?

"Ans. Yes.

"50. During the month of April, 1887, and for a month before that time, were there not thirty or forty freight and passenger trains of cars of the defendant's and Grand Rapids Company passing daily at different hours over the defendant's railway, through the city of Fort Wayne, east and west, including that portion of the railway between Fairfield avenue and Broadway?

"Ans. Yes.

"51. Does not Broadway run northwesterly and southwesterly across the defendant's railway tracks?

"Ans. Yes.

"52. Was not the engineer at his proper place on the engine, watching the track ahead of him all the time he was running from the depot to the point where Meyers was struck?

"Ans. Yes.

"53. Could not Meyers have seen the approach of the engine that struck him, by looking, in time to have avoided the collision?

"Ans. Yes.

"We, the jury, find the above answers to the foregoing interrogatories to be true.

"John Aiken, Foreman."

The first question demanding our consideration is whether these interrogatories and answers are properly a part of the record.

Appellee contends that inasmuch as the record fails to show that the court, in the language of section 546, R. S. 1881, instructed the jury, if they rendered a general verdict, to find specially upon particular questions of fact, to be stated in writing, that the interrogatories are not a part of the record.

, Appellee's learned counsel say that "The record does not show that the court, or any one else, instructed them to answer. The jury went out with certain interrogatories propounded to them by some one with approval and consent of the court. * * * This is not an instruction to answer, and if the jury had refused to answer, no order of court would have been violated. * * * The fact that the jury did take and answer the interrogatories makes no difference. I regard these propositions as thoroughly established in this court." And they cite in support of their contention *Cleveland, etc., R. W. Co.* v. *Bowen, Admr.*, 70 Ind. 478; *Hodgson* v. *Jeffries*, 52 Ind.

334; *Killian* v. *Eigenmann*, 57 Ind. 480; *Ogle* v. *Dill*, 61 Ind. 438, and *Elliott* v. *Russell*, 92 Ind. 526.

These cases all more or less tend to support the appellee's contention in the case before us. But these cases, and all others like them, holding that in order to make special interrogatories to the jury and their answers thereto a part of the record, it must affirmatively appear from the record that the court, upon request by either party, instructed the jury to find specially, etc., were modified by this court in *Frank, Admr.,* v. *Grimes,* 105 Ind. 346 (351), where it is said:

"Doubtless it is true the special interrogatories must be submitted by the court to the jury, and the court must instruct the jury, if they render a general verdict, to find specially upon the particular questions of fact, specified in such interrogatories, in their answers thereto; for these are duties which our civil code imperatively imposes upon our courts, in the trial by jury of civil causes. R.S. 1881, section 546.

"It is not claimed by appellee's counsel, nor is it shown by the record, in the case in hand, that the trial court did not in fact submit the interrogatories to the jury, or did not in fact instruct the jury, if they rendered a general verdict, to find specially upon the particular questions of fact specified in such interrogatories. All that is claimed by counsel is, that it nowhere appears in the record that the trial court performed its plain statutory duty in relation to the submission of the interrogatories and the instruction of the jury. This claim is true, but it is equally true that the record does show that the interrogatories were answered by the jury, and their answers over the signature of their foreman were returned by them into court with their general verdict, and, as the statute requires, were 'recorded with the verdict.' Not only so, but the record further shows that

the attention of the trial court was directed to the special findings of the jury, by appellant's motion for judgment thereon notwithstanding the general verdict. If the court had not in fact submitted the interrogatories to the jury, it is fair to assume that, upon the making of such motion, the court would have promptly struck the interrogatories and answers thereto from the files of this cause, instead of ruling upon the motion as the record shows it did.   *   *   *

"We are of the opinion that * the presumption must be indulged   *   *   *   that the court did its duty in giving the jury the instructions required by law, whenever the record is silent on the subject.   *   *   *   It may seem that what we have said in this opinion, in relation to the submission of interrogatories to the jury, is in conflict with some of the previous decisions of this court, and, perhaps, this is true, but to the extent of any such conflict, it must be held that such previous decisions are modified by this opinion."

This decision was reaffirmed in *Shoner* v. *Pennsylvania.Co.*, 130 Ind. 170, and in *Byers* v. *Davis*, 3 Ind. App. 387.

The condition of the present record and that of the case from which we have quoted are almost identical. We, therefore, conclude that the interrogatories and answers are properly a part of the record.   Indeed, the contention of appellee's counsel to the contrary, in their first brief, is abandoned in their second brief.   They there, in order to get rid of the question of the sufficiency of the third paragraph of the complaint which proceeds upon the theory that the injury complained of was willfully and purposely inflicted, and hence does not negative contributory negligence, claim that the answers to interrogatories make a finding against the truth of the

material and essential averments of the third paragraph, and, therefore, that the judgment is founded on the first and second paragraphs, and hence the error, if error there was, in overruling the demurrer to the third paragraph was harmless.

We are of opinion that the concession of appellee's counsel, that the answers to the interrogatories make a "finding of facts in direct conflict with the material and essential averments in the third paragraph of the complaint," is just and fully warranted by such answers. They clearly show that the killing was not intentional or willful. Therefore, unless the answers to the interrogatories may be harmonized with the general verdict as based on the first and second paragraphs of the complaint, the motion for judgment notwithstanding the verdict should have been sustained.

It is proper to observe that the appellee's counsel, after making the above concession, argue that the second paragraph contains a statement of more than mere negligence, bordering close onto a charge of a willful and intentional infliction of the injuries complained of. That the case made by that paragraph is of such a character, that is, the negligence charged is so gross and reckless as to make the appellant liable regardless of appellee's contributory negligence. This is the middle ground sought to be maintained between willfulness and negligence in *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286, but this court, in that case, repudiated such middle ground. To the same effect is *Parker, Admr.,* v. *Pennsylvania Co.* 134 Ind. 673.

At the threshold of the inquiry as to what the answers to the interrogatories establish, is the question whether such answers show that appellee's intestate was rightfully or wrongfully on appellant's railroad track. It is vigorously contended by appellant, that the third,

fourth, and fifth interrogatories propounded by appellee and their answers, to the effect that it was the duty of the deceased to patrol and keep tramps off said track, and that he had authority from the appellant so to do both before and at the time, and was at the time proceeding carefully on and along said tracks in the faithful discharge of his duties as such policeman at the time he was struck and killed, amount to nothing more than conclusions of law, and therefore not controlling. If it were necessary to decide the question thus raised, we might find some difficulty in holding that these findings do not necessarily include conclusions of law mixed with matters of fact. But conceding, without deciding, that these answers show that the appellee's intestate had a right to go on the railroad track of appellant for the purposes named, that did not absolve him from the duty of exercising due care for his own safety. *Cincinnati, etc., R. W. Co.* v. *Howard,* 124 Ind. 280, and cases there cited; *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* 117 Ind. 56; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.,* 118 Ind. 5; *Louisville, etc., R. W. Co.* v. *Stommel,* 126 Ind. 35; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1.

The answers to the tenth and thirteenth interrogatories of appellee show that the appellant was running the train that struck the deceased thirty to thirty-five miles an hour, through the city, in violation of an ordinance of the city of Ft. Wayne, and, therefore, that appellant was guilty of negligence, but that did not exempt the appellee's intestate from the duty of exercising ordinary care for his own safety. For such negligence there can be no recovery if the negligence of the deceased contributed to the injury, unless appellant did the injury willfully. See the authorities last above cited.

As before observed, it is conceded by appellee that the

charge of willfulness has been negatived and eliminated by the answers of the jury to the interrogatories.

While the answers to the appellee's interrogatories establish that it was the duty of the deceased to patrol the railroad track of appellant within his beat, and that he had authority from the appellant to do so, yet it appears from the seventeenth, forty-seventh, and forty-ninth interrogatories propounded by appellant, and the answers thereto, consistently with those propounded by the appellee, that the deceased was not on the appellant's track in the execution of the authority conferred on him by the appellant and for the purposes mentioned, at the time of the injury, but was walking thereon for his own convenience while on his way to enter upon the discharge of his duties as policeman on his beat at Broadway.

Under the circumstances, he was on the track without right.

In *Jeffersonville, etc., R. R. Co.* v. *Goldsmith*, 47 Ind. 43 (49), this court said: ''Between stations and public crossings the track belongs exclusively to the company, and all persons who walk, ride, or drive thereon are trespassers, and if such persons walk, ride, or drive thereon at the sufferance or with the permission of the company, they do so subject to all the risks incident to so hazardous an undertaking.   *   *   *   And while railroad companies should be held responsible for all consequences resulting from negligence, they should be protected in the free, undisturbed, and exclusive use of their tracks, except at public crossings and stations, when the public, exercising care and caution, have the right to use and cross such tracks.''

To the same effect are *Terre Haute, etc., R. R. Co.* v. *Graham*, 46 Ind. 239; *Gillis* v. *Pennsylvania R. R. Co.*, 59 Pa. St. 129; *Philadelphia R. R. Co.* v. *Hummell*, 44

Pa. St. 375; *Ivens* v. *Cincinnati, etc., R. W. Co.*, 103 Ind. 27.

The eighteenth interrogatory of appellee, and answers thereto, show that appellant's servants on the engine that struck the deceased could have seen said deceased long enough before to have stopped the train in time to avoid injuring him. If we were to concede that the appellant was therefore bound to stop the train before it struck and injured the deceased, that fact could not avail to excuse him from the consequences of his negligence in remaining on the track until he was struck and killed by the engine, so long as the injury was not willfully inflicted. Even if the decedent had not, by his negligence, contributed to his own injury, the fact found in answer to the interrogatory would not be sufficient to fix the appellant's liability, for two reasons, namely:

1. Because, as was said by this court in *Louisville, etc., R. W. Co.* v. *Bryan*, 107 Ind. 51 (53): ''Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to have prevented the injury. Or it must appear that the injurious act or omission was by design.'' It does not appear from the interrogatory and answer, that the appellant's servants knew of the presence of the deceased on the track in time to have stopped the train before the collision, or that the injury was willfully or intentionally inflicted.

In *Parker, Admr.*, v. *Pennsylvania Co., supra*, it was said by this court, that ''The railroad company owes the trespasser no protection against negligence. It does owe him the duty of all reasonable effort to avoid injuring him when his presence and his own inability to avoid injury are known to it, but does it owe such duty when

his presence is not known? It would seem that a negative answer is all that the inquiry is susceptible of.''

2. Even if appellant's servants had known of the presence of the deceased on the track in front of the moving train in time to have stopped it before the collision, they had a right to presume that he would step off the track in time to avoid injury up to the last moment before he was struck. *Terre Haute, etc., R. R. Co.* v. *Graham, supra; Indianapolis, etc., R. R. Co.* v. *McClaren,* 62 Ind. 566; *Terre Haute, etc., R. R. Co.* v. *Graham, supra; Palmer* v. *Chicago, etc., R. R. Co.,* 112 Ind. 250.

Therefore, ordinary care on their part did not require them to anticipate that he would not so step off, and did not require them to stop the train and send a force forward sufficient to remove him. Any other rule would practically amount to a deprivation of railroad companies of the use of their property for the great purposes designed by the State in authorizing them to secure the right of way, thereby subserving the public welfare in providing safe and rapid transportation for freight and passengers. If railroad companies are required to stop their trains whenever a tramp or anybody else is discovered walking on the track in front of a moving train, and send forward force sufficient to remove such person from their track, or if they have not sufficient force to remove such person then to persuade him to get off the track, and on failure to do so, are to be held liable for damages for injuries unintentionally done to such indiscreet person, on the ground that such failure is negligence, then railroading in Indiana must soon come to an end. But if we were wrong in assuming that the decedent, at the time the accident occurred, had no right to be on the track, and if, in fact, he had a legal right to be there, still if the answers to the interrogatories show that decedent, by his own negligence, contributed materially to

the production of his own injury, then he can not recover, because, in that case, he has no cause of action, even though the appellant's negligent conduct also contributed to the production of the injury.

Appellee's cause of action does not consist alone of injurious consequences resulting from appellant's negligence, but superadded to that must be established that no act, or omission to act, on the part of the decedent contributed materially to the production of the injuries complained of. While this contribution to the injury, by act, or omission to act, on the part of the injured person, may, under the general rule, be a defense, its absence is as much a part of the cause of action as the negligence of defendant, and, like it, must be affirmatively alleged and proven. *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* *supra; Chicago, etc., R. W. Co.* v. *Hedges, Admx., supra; Louisville, etc., R. W. Co.* v. *Stommel, supra; Indiana, etc., R. W. Co.* v. *Hammock, supra; Cincinnati, etc., R. W. Co.* v. *Howard, supra,* and cases there cited.

It appears from the answers to the interrogatories, that deceased was a policeman, and had been for six years, in the city of Fort Wayne; that he was, on the evening of the 22d day of April, 1887, at about 7:40 o'clock, on his way to his beat at Broadway to resume his duty as night policeman; that at Fairfield avenue, about two thousand feet west of the passenger depot of appellant, the watchman at the crossing called decedent's attention to the fact that passenger train No. 9, west bound, was then standing at said depot and would be along soon, it then being in plain view, and the double tracks being straight all the way, the train was in plain sight of decedent if he had looked from the time it left the depot until it struck him; that notwithstanding the watchman's warning, decedent started on walking west on the south main track until he met passenger train No. 8 going east on

the south main track, when he stepped over to the north main track and continued to walk on west thereon until train No. 9 overtook, struck, and killed him; that the bell of No. 9 was continuously rung until the collision; that decedent could have seen the engine approaching at any time after it started from the depot, the headlight was burning and the engineer discovered him walking on the track, about fifty or sixty feet in front of the engine, when the engineer sounded the alarm whistle; that when the engineer first saw decedent, he could not have stopped the engine in time to avoid the collision, and that the train was running at the rate of thirty to thirty-five miles an hour, in violation of an ordinance of the city limiting the speed of all trains in the city to six miles an hour.

In addition to all this it is found that there was a good level walk along the north side of the main track, over which decedent could have traveled in safety to his destination, and could likewise have traveled in safety on the south side of the tracks to such destination, and that there was a space of eight feet between the tracks.

The jury also find that there was no evidence that he looked and listened for the approach of the train, and that there was no evidence that he made use of any means whatever to ascertain whether it was safe to go on the north main track where he did go, and where he was struck and killed by the train, and that during the month of April, 1887, and for a month prior to that time, from thirty to forty trains passed over said tracks daily at different hours of the day.

It thus appears affirmatively that he had every means on earth to know the great danger to which he was exposing himself; that he had every opportunity to look and listen for the approach of the train, and that he could have seen a train approach by looking at it.

The sixteenth special finding to interrogatory propounded by appellee finds that the ringing of the bell and other loud noises made by the east bound train prevented deceased from hearing the approach of the west bound train that struck him. But the other findings show that he knew that it was at the depot and about to start west following him.

It was said in *Terre Haute, etc., R. R. Co.* v. *Graham, supra,* that "no neglect of duty on the part of a railroad company will excuse any one * * from using the senses of sight and hearing, where these may be available; and injury where the use of either of such faculties would have given sufficient warning to enable a party to avoid the danger, conclusively proves negligence, and there can be no recovery."

And if the use of one of these faculties is rendered unavailable for any cause, the obligation to use the other is thereby rendered all the stronger. *Louisville, etc., R. W. Co.* v. *Stommel, supra;* to the same effect are *Indiana, etc., R. W. Co.* v. *Hammock, supra; Ohio, etc., R. W. Co.* v. *Hill, Admx., supra.*

Even if we concede that he had a right to walk on the track, that right was no greater than the right of a traveler on a highway where it crosses a railroad track, the railroad company is entitled to precedence at such crossings, and the reason for such precedence is stronger in the use of their track between stations and public crossings, though pedestrians may have the right to walk along the track. *Indianapolis, etc., R. R. Co.* v. *McLin,* 82 Ind. 435.

It was held by this court in *Louisville, etc., R. W. Co.* v. *Stommel, supra,* that a railroad track is of itself a warning to those who go upon it, and those about to cross it are bound to recognize the danger and to make use of the sense of hearing, as well as that of sight, to avoid injury from passing trains; and if one neglects to

do this, but carelessly ventures upon the track and is in-jured, it must be at his own risk where he relies solely upon the negligence of the company. And it was held in that case, and in many other cases, by this court, that where a person is injured by a collision with a moving railroad train, the fault is *prima facie* his own, and he must affirmatively show that his fault or negligence did not contribute to the injury, or he can not recover. *Cin-cinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Toledo, etc., R. W. Co.* v. *Brannagan, Admx.,* 75 Ind. 490; *Indi-ana, etc., R. W. Co.* v. *Hammock, supra.*

Here, instead of removing the *prima facie* fault attach-ing to the appellee's intestate, the jury find that he could have seen the approaching train if he had looked in time to avoid the collision.

It was held by this court in *Ohio, etc., R. W. Co.* v. *Hill, Admx., supra,* that although a railway company may be negligent, a person injured can not, nevertheless, recover if by looking he could have seen an approaching train in time to escape; and it will be presumed, in case he is injured by a collision, either that he did not look, or if he did look he did not heed what he saw. Such conduct is held negligence *per se.* To the same effect are *Indiana, etc., R. W. Co.* v. *Hammock, supra; Louis-ville, etc., R. W. Co.* v. *Stommel, supra; Chicago, etc., R. W. Co.* v. *Hedges, Admx., supra.*

In the latter case, very much like the present, the late Justice MITCHELL, speaking for the court, said: "The jury, having found that the intestate could have seen the approaching train in time to have avoided injury if he had looked * * * raises the presumption that he either did not look, or that he deliberately took the risk of at-tempting to cross, notwithstanding the approach of the train. In either case a recovery is impossible. * * * The special findings, therefore, necessarily exclude the

idea that the intestate looked before going upon the track, in such a sense as to rebut the presumption of negligence, and affirmatively show that he stepped in front of the moving cars while in a state of apparent abstraction, or indifference to the perils of the situation, and regardless of the warnings of  *  *  the conductor and brakeman. Such conduct the law pronounces negligent.  *  *  *  While nothing is to be taken by mere inference or intendment in aid of the special findings as against the general verdict, they are nevertheless to be fairly construed with due regard to the issues and the burden of proof in the case, and if, after being thus construed, it is apparent that they establish facts which, if taken as true, defeat the plaintiff's right of recovery, the judgment should be for the defendant, notwithstanding the general verdict may have affirmed a right of recovery in the plaintiff.''

The judgment was reversed, with instructions to the trial court to sustain the motion for judgment in favor of the defendant on the answers to interrogatories, notwithstanding the verdict.

It is the established rule that such a motion can only be sustained where the answers to the special interrogatories can not be reconciled with the general verdict, upon any supposable state of the evidence, and where, as here, the issue was made by the answer of the general denial only, and such special findings controvert some fact or facts which constitute an essential and indispensable part of the plaintiff's cause of action. In such a case, the special findings are in irreconcilable conflict with the general verdict.

In the case at bar, the general verdict necessarily affirms that the intestate looked and listened for the approach of the train that struck and killed him, and that he exercised due care and caution to avoid the injury occasioned thereby. All of this is flatly contradicted by

the special findings. In case of such conflict, the statute requires us to treat the special findings as true, and the general verdict, to the extent of such conflict, as untrue; and requires us to hold that the former shall control the latter, and to give judgment accordingly. R. S. 1881, section 547.

It results that the special findings so far destroy the general verdict as to show that the appellee has no cause of action against the appellant. It is, therefore, wholly unnecessary to determine the many interesting questions so ably discussed on both sides as to whether the evidence is properly in the record, or whether there is a proper bill of exceptions in the record or not, and whether it was error to overrule the motion for a new trial or not.

The judgment is reversed and the cause remanded, with instructions to the trial court to sustain appellant's motion for judgment in its favor, notwithstanding the general verdict.

Filed Jan. 2, 1894.

CONCURRING OPINION.

HOWARD, C. J.—I concur in the conclusion to which the court has arrived in this case, for the reason that while the appellant company was guilty of gross negligence yet the deceased was himself also guilty of negligence, as shown in the answers to the interrogateries. I do not think, however, that the deceased policeman was a trespasser upon the grounds of appellant, or that he was there without right at the time he was killed. The track at the place was within the limits of his beat, he was a policeman of the city, and I think he had a right to be where he was, provided he was in the exercise of due care. But because he was himself guilty of contributory and inexcusable negligence, I think that his administratrix had no right of action against the company.

Filed Jan. 2, 1894.